UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TAMMY NANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:11-CV-505 |
| ) | (VARLAN/GUYTON) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16]. Plaintiff Tammy Nance seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On December 2, 2009, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began September 24, 2009. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On June 2, 2011, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 33-53]. On June 30, 2011, the ALJ found that the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's

request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

I. **ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since September 24, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Fibromyalgia; Chronic Fatigue Syndrome; Diabetes; Hypertension; Hyperlipidemia; Obesity; Adjustment disorder with depressed mood (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ropes, ladders or scaffolds; must avoid concentrated exposure to pulmonary irritants; cannot work around unprotected heights or hazardous machinery; must be able to sit and stand at her discretion; can perform only occasional postural activities. Mentally, she is limited to understanding and remembering simple instructions; is capable of occasionally interacting appropriately with the general public; is capable of frequently interacting appropriately with supervisors and co-workers; and can adapt to occasional changes in the workplace and in job routines.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 18, 1961 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 24, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 15-28].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a

3

disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.   **EVIDENCE**

The Plaintiff was forty-eight years old on her alleged onset date and was fifty years old at the time of the ALJ's decision. She has a high school education and past work experience as a sewing machine operator.

A.   *Medical Evidence*

The Plaintiff has been treated at Clinton Family Physicians since 1994 by Brad Gurley, M.D., and later William H. Culbert, M.D. As early as October 1999, Alex Alexander, M.D., a physician filling in for Dr. Gurley, prescribed Effexor in response to the Plaintiff's complaints of

6

depression. She did not take the Effexor. [Tr. 331]. Following a visit on February 9, 2001, Dr. Gurley noted that he suspected that the Plaintiff was malingering with regard to her complaints of pain in her left hand. [Tr. 328]. After this visit, the Plaintiff was seen by Dr. Culbert, rather than Dr. Gurley.

Plaintiff was treated by Dr. Culbert over the next seven years, for treatment of *inter alia* sinus infections, bronchitis, soft tissue injuries from two motor-vehicle accidents, neck pain following an assault, poison ivy, stress surrounding her divorce, cardiovascular ailments, and dermatitis. [Tr. 320-28, 300-316]. Plaintiff complained that she was diabetic, though this self-diagnosis was not confirmed. [Tr. 323].

On September 30, 2009, the Plaintiff presented at Parkwest Medical Center complaining of general malaise, fatigue, and weakness. She reported that she was seen by Dr. Culbert approximately one month prior to the emergency room visit and that she had not seen any improvement over her last five visits with Dr. Culbert. [Tr. 250].

Plaintiff's self-report at the emergency room is inconsistent with the records from her visits with Dr. Culbert during this period. In notes from a visit on September 2, 2009, Plaintiff and Dr. Culbert discussed her smoking cessation, her blood pressure, lack of exercise, and the need to watch her diet. [Tr. 351]. No mention was made of a lack of energy. Notes from visits on September 9, 2009, and September 18, 2009, do not mention fatigue or a lack of energy. [Tr. 350]. The first mention of the Plaintiff complaining of fatigue appears in notes from September 25, 2012. [Tr. 348].

A phone message from the Plaintiff to Dr. Culbert dated November 13, 2009, states that the Plaintiff "needs a letter for disability needs it to state it is for congestive heart failure." [Tr. 346].

7

In treatment notes from November 20, 2009, Dr. Culbert noted: "She has complicated history and symptoms. Has known fibromyalgia. She has had fatigue and malaise that is progressive. Almost profound at this point." [Tr. 345]. This statement is the first note regarding fibromyalgia in the record. In making this reference, Dr. Culbert does not mention a prior visit on which the condition was diagnosed, nor does he indicate that he performed tests at the visit on November 20, 2009, to confirm diagnosis of the condition.

Plaintiff's visits with Dr. Culbert over the next eighteen months continue to discuss her fatigue. [Tr. 394-400]. In addition, she requests documentation to support her claims for long term disability and Plaintiff's desire to have Dr. Culbert complete "disability papers." [Tr. 343-44].

In July 2010, Plaintiff presented with "extended forms . . . for depression, fibromyalgia and chronic fatigue," and Dr. Culbert observed that he did "not know how she could function in [eight-hour] day with . . . these issues." [Tr. 394]. On the same day, Dr. Culbert completed a form entitled "Treating Relationship Inquiry," with short-answer and multiple-choice questions, [Tr. 402-405]. On this form, he indicated that Plaintiff would not be able to maintain a forty-hour work week without missing more than two days per month. [Tr. 402]. He indicated that she could only occasionally lift one to five pounds, and she could sit, stand, and walk for less than an hour each in a day. [Tr. 402]. Dr. Culbert responded "Yes," when asked if the Plaintiff required bed rest and if she had problems with stamina and endurance. [Tr. 403]. When given the options of "Extreme," "Severe," "Moderate," and "Mild," Dr. Culbert estimated that Plaintiff's pain is moderate seventy-five percent of the time and is mild twenty-five percent of the time. [Tr. 404].

8

On March 26, 2010, Jeffrey Summers, M.D., performed a consulting examination of the Plaintiff. Dr. Summers noted that the Plaintiff has difficulty performing strenuous exertion, including standing or walking for greater than six hours in a single work day, but he noted that, functionally, she was able to perform all activities of daily living without assistance. Dr. Summers noted that on examination, Plaintiff had fourteen tender-point areas of moderate severity consistent with fibromyalgia. [Tr. 360]. No other musculoskeletal findings were noted. [Id.]. Dr. Summers concluded, "Based on her history and exam, it is reasonable to expect patient will have difficulty performing strenuous exertion including standing and walking for greater than 6 hours in a single work day. She should tolerate all other work related activities in this regard." [Id.]. He suggested that she may be suited for clerical work or other work entailing close to eight hours of sitting. [Id.].

On May 4, 2011, the Plaintiff was seen by Sam Kabbani, M.D. Plaintiff presented with a chief complaint of chronic fibromyalgia. [Tr. 449]. Following a neurological examination, Dr. Kabbani diagnosed the Plaintiff as suffering primarily from unspecified myalgia and myositis, along with lumbago and other malaise and fatigue. [Tr. 450].

*B.     Other Evidence*

Vocational Expert JoAnn Bullard testified at the hearing in this matter. She testified that the Plaintiff had past experience as a sewing machine operator, which is light, semiskilled work, and as a telephone operator, which is sedentary, semiskilled work. [Tr. 50]. Ms. Bullard testified that the Plaintiff would not be able to return to her previous work, but she could perform work at the light exertional level. [Tr. 51]. Specifically, Plaintiff could perform work as a sorter, office helper, or textile sorter, all of which are positions available in both the regional and national economies. [Id.]. Ms. Bullard testified that, if Plaintiff could lift only five pounds

9

occasionally and was precluded from walking, standing, and sitting more than an hour in an eight-hour shift, she would be precluded from working in the regional and national economies. [Tr. 52].

## V. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred by failing to give appropriate weight to the Plaintiff's subjective complaints. [Doc. 14 at 4-5]. The Plaintiff also argues that the ALJ erred by not affording weight to the "Treating Relationship Inquiry," completed by Dr. Culbert on July 19, 2010. [Doc. 14 at 5].

The Commissioner responds that Plaintiff has the burden of proving she is disabled. [Doc. 16 at 3]. The Commissioner maintains that the Plaintiff did not prove that her subjective complaints of pain and other symptoms were fully credible. [Id.]. The Commissioner argues that the ALJ was not required to afford weight to Dr. Culbert's findings in the "Treating Relationship Inquiry," because the ALJ found that Dr. Culbert's opinion was simply a recitation of the Plaintiff's subjective complaints and "self-assessed residual functional capacity." [Doc. 16 at 8]. The Commissioner maintains that the ALJ's decision is supported by substantial evidence.

## VI. ANALYSIS

The Plaintiff presents two allegations of error. The Court will address each allegation in turn.

## A. Weight Afforded to Plaintiff's Subjective Complaints

The Plaintiff first argues that the ALJ erred by not fully crediting Plaintiff's subjective complaints. In support of this position, the Plaintiff cites the Court to Laxton v. Astrue, 2010 WL 925791 (E.D. Tenn. Mar. 9, 2010). In Laxton, the Court explained, "A fibromyalgia sufferer's RFC simply cannot be accurately determined without proper consideration of his own statements. Thus, if the ALJ erroneously rejects the claimant's statements as incredible, the entire RFC determination is flawed." Id. at *12.

The Commissioner responds that the Plaintiff's statements about pain are not conclusive evidence of disability. See 20 C.F.R. §§ 404.1529(a), 416.929(a). The Commissioner maintains that the Plaintiff's allegations of pain must be corroborated by objective medical evidence or the condition must be of such severity that it can be expected to produce the alleged pain. [Doc. 16 at 4 (citing Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 853 (1986))]. The Commissioner directs the Court to the Plaintiff's single consultation with a neurologist, Sam Kabbani, M.D., and notes that despite the Plaintiff presenting with complaints of fibromyalgia, Dr. Kabbani declined to diagnose the Plaintiff with fibromyalgia and instead found that she suffered primarily from unspecified "myalgia and myositis." [Tr. 29-30].

As a general rule, an ALJ's credibility determination is entitled to substantial deference. Within the last month, the Court of Appeals for the Sixth Circuit has reconfirmed that this rule applies even in cases where a plaintiff claims to be disabled due to fibromyalgia. In Torres v. Comm'r of Soc. Sec., 2012 WL 3089334 (6th Cir. July 31, 2012), the court found that the ALJ had not erred by finding the plaintiff was not disabled, because neither a diagnosis of fibromyalgia nor plaintiff's allegation of fibromyalgia automatically entitled the plaintiff to a finding of disability or disability benefits.

11

In so finding, the Court of Appeals reiterated the deference afforded to an ALJ's credibility finding. The Court of Appeals explained:

> In making a disability determination, the ALJ is required to "consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529. "Credibility determinations with respect to subjective complaints of pain rest with the ALJ," Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 652 (6th Cir. 2009) (internal quotation marks and alterations omitted), and "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility," Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997).

Id. at *6.

In this case, the ALJ concluded that the Plaintiff was not credible because: she had a "long history of seeking physician's statements to get out of work"; she had a "long history of non-compliance with prescribed medical treatment"; of her "condition improved after she became compliant with medical advice"; her "long history, going back to 1997, of exaggerating her condition and seeking off[-]work notes"; she frequently requests documentation to demonstrate disability by composed and contain specific findings; she makes inconsistent statements about her condition; and she is able to perform daily activities that are not consistent with her alleged disability. [Tr. 23-24 (emphasis removed)].

The ALJ thoroughly explained his determination that the Plaintiff was not fully credible. His credibility determination was well-reasoned, and the Court finds that it was supported by substantial evidence. The ALJ's finding with regard to credibility is to be afforded great weight and deference, and the Plaintiff has failed to demonstrate any basis for not affording such weight to the ALJ's credibility finding in this case. Moreover, the objective medical evidence in the

12

record does not support according additional weight to Plaintiff's subjective complaints.

Accordingly, the undersigned finds that Plaintiff's allegation that the ALJ erred in his credibility determination and by not fully crediting the Plaintiff's subjective complaints is not well-taken.

**B.      Weight Afforded to "Treating Relationship Inquiry," Completed by Dr. Culbert**

The Plaintiff argues that findings made by Dr. Culbert, who is the Plaintiff's treating physician, should have been afforded substantial weight, so long as they were not contradicted by evidence in the record. The Plaintiff submits that the ALJ substituted his opinion for that of Dr. Culbert, and the ALJ discounted Dr. Culbert's answers in the "Treating Relationship Inquiry," simply because he believed Dr. Culbert was sympathetic to the Plaintiff's complaints. [Doc. 14 at 6].

The Commissioner responds that the ALJ was not required to adopt Dr. Culbert's opinion because the Commissioner is only bound by treating physician's opinions that are supported by sufficient clinical findings and are consistent with the evidence. In this case, the ALJ found that Dr. Culbert's "opinions," as found in the "Treating Relationship Inquiry," were "no more than a recitation of the claimant's own subjective complaints and her own self-assessed residual functional capacity." [Tr. 25]. The Commissioner maintains that the Plaintiff's self-reporting was not entitled to substantial weight, because the ALJ found she lacked credibility due to her exaggeration of symptoms and lack of compliance with suggested treatment. [Doc. 16 at 4-5].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2)

13

and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

The treating-source rule is not, however, "a procrustean bed, requiring an arbitrary conformity at all times," Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam). The ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

In this case, the ALJ explained, in detail, his decision not to afford weight to Dr. Culbert's findings. The ALJ's discussion of the Plaintiff's treatment with Dr. Culbert spans two pages of single-spaced text. [Tr. 18-20]. The ALJ devoted considerable time to discussing the Plaintiff's reported activities and symptoms. [Tr. 18-21]. He concluded that the Plaintiff was not credible and her subjective complaints could not be relied upon.

In regard to the findings indicated by Dr. Culbert, the ALJ explained:

> As for the opinion evidence, little weight has been given to the opinions of Dr. Culbert. The claimant testified at the hearing that after she gave the Social Security forms from her attorney to Dr. Culbert, he asked her the questions on the form and wrote down her answers. Therefore, the "opinions" contained in Exhibit 14F[, "Treating Relationship Inquiry,"] are no more than a recitation of the claimant's own subjective complaints and her own self-assessed residual functional capacity. Dr. Culbert's own treatment notes document this exchange on July 19, 2010. (Exhibit 13F at p. 1). He noted "Comes in with extended forms today for depression, fibromyalgia and chronic fatigue[."] In the margin, he noted "PT" next to "Unable to stand or sit for a long time. Went through the questionnaire. Did not know how she could function in 8 hour day without breathing up these issues. [sic]. When she walks to mail box has to lie down for one hour. Cannot lift much of anything, driving gives her serious problems with dizziness. Has significant flat affect". He goes on to note: "Named a couple of therapists for depression. Fibromyalgia been stable somewhat. Rates her pain as moderate, mild at times, then episodes of severe severity. . . ."

[Tr. 25]. The ALJ also described Dr. Culbert's willingness to compose documentary evidence to support Plaintiff's claim and cited Dr. Culbert's note that the Plaintiff needed "to find out what they require." [Id.]. The ALJ noted that Dr. Culbert's comment about finding out what was need for the disability determination was made shortly after the Plaintiff had reported going fishing with her son. [Tr. 25 (citing Tr. 395)]. Based on these findings, the ALJ found that Dr. Culbert's opinions, specifically those contained in the "Treating Relationship Inquiry, were not a valid treating physician opinion. [see Tr. 25].

As noted above, a treating physician's opinion as to the nature and severity of an impairment is entitled to controlling evidence when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." The Court finds that the ALJ's conclusion that Dr. Culbert's opinion was not well-supported by objective medical evidence is supported by substantial evidence. The evidence of record – including the Plaintiff's testimony [Tr. 47-48],

15

Dr. Culbert's dictation notes, and the notes Dr. Culbert made on the "Treating Relationship Inquiry" itself – support the conclusion that Dr. Culbert merely reiterated the Plaintiff's subjective complaints. Dr. Culbert did not cite any medical evidence in support of his findings, and his treatment notes are not consistent with the extreme findings contained in the "Treating Relationship Inquiry." Based on the foregoing, the Court finds that the ALJ did not err in concluding that Dr. Culbert's findings were not entitled to controlling weight because they were not supported by objective medical evidence.

When a treating physician's opinion is not entitled to controlling weight, the ALJ must, nonetheless, weigh the opinion pursuant to 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2), to determine if the opinion is entitled to some weight in the decision-making process. In this case, the ALJ found that Dr. Culbert's findings were not entitled to any weight. The ALJ considered that the length of the treating relationship between Dr. Culbert and the Plaintiff would weigh in favor of affording the opinion weight. [See Tr. 18-20]. He found, however, that there was little relevant evidence in the treatment record that supported the very restrictive findings. [Tr. 25]. Moreover, the ALJ found that these restrictions were not consistent with the record as a whole and specifically the Plaintiff's daily activities. [See Tr. 24]. The ALJ did not directly consider Dr. Culbert's specialization, but because Dr. Culbert is a family physician this factor is of little effect.

The Court finds that the ALJ properly weighed the applicable statutory factors to determine that the findings from Dr. Culbert were entitled to no weight, 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). In addition, the Court finds the ALJ explained the basis for affording no weight to the treating physician's opinion and gave good reasons for his decision.

16

Accordingly, the undersigned finds that the Plaintiff's allegation that the ALJ erred by not affording appropriate weight to Dr. Culbert's findings is not well-taken.

## VII. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work with certain enumerated restrictions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 13]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).